FRANK MORAN, Plaintiff-Appellant, *v.* ILLINOIS CIVIL SERVICE COMMISSION *et al.*, Defendants-Appellees.

First District (1st Division)   No. 83—211

Opinion filed December 27, 1983.

Cornfield and Feldman, of Chicago, for appellant.

Lawrence X. Pusateri and John N. Scholnick, both of Chicago (Peterson, Ross, Schloerb & Seidel, of counsel), for appellees.

JUSTICE CAMPBELL delivered the opinion of the court:

Plaintiff, Frank Moran, appeals from the decision of the circuit court of Cook County affirming the finding of defendant, Civil Service Commission (Commission), that defendant, Department of Corrections (Department), had cause to discharge plaintiff from his position as correctional captain at Stateville Correctional Center (Stateville).

On appeal plaintiff raises the following issues: (1) whether plaintiff's rights under Rule 6(e) of the Federal Rules of Criminal Procedure were violated; (2) whether State courts have jurisdiction to resolve issues concerning false testimony before a Federal grand jury; (3) whether a witness can be discharged from employment for his false testimony before a Federal grand jury; (4) whether there was "cause" for dismissal of plaintiff.

Plaintiff was charged by the Department with violating Department of Corrections Adult Administrative Regulation No. 207, which reads: "To ensure that the conduct of each employee of an Adult Division institution or facility will not bring discredit upon himself or the agency." The Director of the Department determined that plaintiff violated the regulation by giving false testimony under oath before a Federal grand jury. Following an administrative hearing, the Commission's hearing officer found that plaintiff's discharge was warranted. The Commission thereafter concurred in and adopted the recommendations of the hearing officer. Plaintiff filed a complaint in the circuit court seeking review of the Commission's decision. The circuit court affirmed.

The record discloses that on May 10, 1979, plaintiff testified before a Federal grand jury in regards to inmate beatings which occurred at Stateville. At the time of the beatings plaintiff was a correctional lieutenant. Subsequent to his grand jury testimony, plaintiff was granted immunity from prosecution and testified as a State witness at the criminal trial which arose from the grand jury investigation.

At the criminal trial on December 11, 1980, plaintiff testified as follows:

"Ms. Parkhurst [Assistant United States Attorney]: Mr. Moran, when you testified before the grand jury did you make any statements different there than you have testified to today?

Mr. Moran [Plaintiff]: Yes, I did.

Ms. Parkhurst: What did you say there that you said differently here?

Mr. Moran: When I testified before the grand jury I omitted the fact that I had entered the shower room in cell house B East.

Ms. Parkhurst: What is your understanding with respect to your status regarding your grand jury testimony?

\* \* \*

Mr. Moran: There is a possibility I may be prosecuted for perjury for my false testimony in front of the grand jury and also that that information will re [sic] relayed to the Illinois

[Department] of Corrections for their decision.

Ms. Parkhurst: For their decision as to what?

Mr. Moran: My job status.

* * *

Mr. Rooney [Defense Attorney]: Did you not raise your right hand and promise to tell nothing but the truth to the [grand jury]?

Mr. Moran: Yes, I did.

Mr. Rooney: Now you say you lied to them?

Mr. Moran: That is correct."

The record further discloses that on June 1, 1981, the United States Attorney's Office sent a letter to the Department informing the Department that plaintiff had testified at the trial of five former Stateville guards who were convicted of civil rights violations stemming from their beatings of three Stateville inmates on January 1, 1979. The letter further stated that plaintiff had testified under a grant of immunity, and that as part of the immunity agreement, plaintiff was advised that the Department would be informed of his failure to cooperate. Along with the letter, the United States Attorney's office sent the Department a copy of the immunity agreement between plaintiff and the United States Attorney's office. The immunity agreement stated that plaintiff had admitted that he had testified falsely before the Federal grand jury. The agreement specifically provided: "We wish to advise you that we intend to notify the Illinois Department of Corrections of your concealment of information for whatever action they deem appropriate." Plaintiff's signature appeared at the bottom of the immunity agreement.

At the hearing before the Commission on October 6 and 7, 1981, Michael O'Leary, Assistant Warden of Operations at Stateville, testified that plaintiff's testimony before the grand jury would bring discredit upon the Department. O'Leary added that because plaintiff was a supervisor, his command for respect from personnel, and his ability to enforce his decisions, would be greatly affected. Plaintiff's ability to submit honest and accurate daily reports would also be questioned. In O'Leary's opinion, plaintiff violated Regulation 207 by his act of testifying falsely before the grand jury. O'Leary's testimony was corroborated at the hearing by Darryl Cobb, Chief of Security at Stateville, and by Robert De Robertis, Chief Administrator at Stateville. De Robertis further added that plaintiff's conduct affected his credibility and was detrimental to the Department.

Plaintiff was called as an adverse witness but refused to answer any questions surrounding his testimony at the criminal trial on the

basis of his fifth amendment privilege against self-incrimination. Plaintiff was then advised by the hearing officer that his refusal to testify would be considered in determining whether or not the charges for discharge had been proven.

## I

Plaintiff first contends that his rights under Rule 6(e) of the Federal Rules of Criminal Procedure (Fed. R. Crim. P. 6(e)) were violated by the disclosure of plaintiff's grand jury testimony to the Department. Rule 6(e) provides in pertinent part that:

> "Disclosure of matters occurring before the grand jury other than its deliberations and the vote of any juror may be made to the attorneys for the government for use in the performance of their duties. Otherwise a[n] *** attorney *** may disclose matters occurring before the grand jury only when so directed by the court preliminarily to or in connection with a judicial proceeding or when permitted by the court at the request of the defendant ***."

Plaintiff claims that Rule 6(e) prohibits a United States Attorney from sharing information with State government attorneys. (*In re Holovachka* (7th Cir. 1963), 317 F.2d 834; *United States v. Downey* (S.D. Ill. 1961), 195 F. Supp. 581.) Plaintiff claims further that there was no court permission for divulging the grand jury testimony and therefore the testimony is inadmissible against plaintiff.

■ Defendants argue, however, that direct evidence of plaintiff's false testimony before the grand jury was contained in the transcript of plaintiff's testimony in the subsequent criminal trial. The United States Attorney's correspondence was sent to the Department following the criminal trial, and plaintiff testified that he was aware that his admission of lying would be communicated to the department. Furthermore, at the criminal trial, plaintiff's immunity agreement with the United States Attorney, which stated unequivocally that plaintiff lied before the grand jury, was read into the record. Plaintiff's grand jury testimony was thereby made a matter of public record of which plaintiff cannot complain. See *Craig v. Harney* (1947), 331 U.S. 367, 91 L. Ed. 1546, 67 S. Ct. 1249.

The correspondence complained of reads in part:

> "The immunity was granted after Mr. Moran disclosed information which he had previously withheld concerning the events of January 1, 1979. Unfortunately, Mr. Moran had failed to tell the Federal Grand Jury what he knew and in fact had perjured himself before the Federal Grand Jury."

The letter was sent and received by the Department subsequent to plaintiff's testimony at the criminal trial. We agree with defendants that plaintiff's false testimony before the grand jury became a matter of public record and therefore plaintiff cannot claim that his rights under Rule 6(e) were violated by the United States Attorney's correspondence to the Department. (See *Giampa v. Illinois Civil Service Com.* (1980), 89 Ill. App. 3d 606, 411 N.E.2d 1110.) We therefore need not reach the issue as to whether or not plaintiff's rights under Rule 6(e) were violated by the United States Attorney's communication to the Department.

## II

Plaintiff also argues that the State of Illinois is preempted from making a finding that perjury occurred before a United States grand jury. Plaintiff claims that because Congress has reserved the adjudication and punishment for the offense of perjury before a Federal grand jury exclusively to the Federal district courts, the State cannot punish plaintiff for such alleged false testimony. (*Parks v. Department of Mental Health & Developmental Disabilities* (1982), 110 Ill. App. 3d 184, 441 N.E.2d 1209.) The defendants counter by asserting that plaintiff's discharge proceeding is not a criminal action for perjury. Defendants claim that the focus of the present action is to determine plaintiff's suitability for continued employment as a correctional captain. We agree.

■ Initially, we note that the purpose of the present proceedings is to determine whether or not plaintiff violated Regulation 207. A civil service proceeding is not "intended to redress criminal wrongs by imposing sentences of imprisonment, other types of detention or commitment, or fines." (*In re Daley* (7th Cir. 1977), 549 F.2d 469, 475.) Defendants have not attempted to establish that plaintiff committed perjury before the grand jury. The record discloses that plaintiff admitted at a public trial that he had testified falsely before the grand jury. Defendants seek to discharge plaintiff for bringing discredit upon himself as a correctional captain, and upon the Department. Plaintiff has not shown that defendants are, in any manner, invading the province of the Federal district courts in discharging plaintiff for violating Regulation 207. Therefore, we cannot agree with plaintiff that the State is preempted from adjudicating this matter.

## III

Plaintiff's next contention is that he is immune from all liability,

except perjury, for his false testimony before the grand jury. Plaintiff argues that a grand jury witness is immune from civil liability for his testimony (*Liddell v. Smith* (7th Cir. 1965), 345 F.2d 491), and that the only liability for a falsely swearing witness is in a criminal action for perjury, therefore, he could not be discharged for his conduct.

Defendant's argue, however, that the witness immunity rule applies only to a witness' civil liability for damages caused as a result of his perjured testimony. (*Briscoe v. LaHue* (1983), 460 U.S. 325, 75 L. Ed. 2d 96, 103 S. Ct. 1108.) Defendants claim that the rule has not been extended beyond actions for damages and therefore is not applicable to a discharge proceeding. Defendants assert that the United States Supreme Court has specifically carved out an exception from the immunity rule for administrative proceedings which affect the witness' employment. Defendants rely on *Imbler v. Pachtman* (1976), 424 U.S. 409, 47 L. Ed. 2d 128, 96 S. Ct. 984) to support their argument. In *Imbler*, a prosecutor who was otherwise immune from liability for damages resulting from his official conduct, was nevertheless found to be amenable to professional discipline by his peers for his conduct. This principle with respect to prosecutors has been held to apply to witnesses as well. *Briscoe v. LaHue* (1983), 460 U.S. 325, 75 L. Ed. 2d 96, 103 S. Ct. 1108.

■ Plaintiff was charged with violating Regulation 207 by testifying falsely before a Federal grand jury and thereby bringing discredit upon himself and the Department. There was ample evidence to support the Department's assertion that plaintiff's conduct adversely affected his position as a correctional captain, and the Department as a whole. We reject outright plaintiff's contention that his conduct of testifying falsely before the grand jury should be condoned where plaintiff's conduct directly affected his employment.

IV

Plaintiff's final contention is that no cause existed for plaintiff's discharge. Plaintiff argues that the State failed to satisfy the burden of proving all of the elements of perjury by clear and convincing evidence. (*Drezner v. Civil Service Com.* (1947), 398 Ill. 219, 75 N.E.2d 303; *Shallow v. Police Board* (1981), 95 Ill. App. 3d 901, 420 N.E.2d 618.) Plaintiff also argues that the record is barren of any facts supporting a conclusion that plaintiff's conduct brought disrepute upon the Department.

■ On administrative review, this court must initially ascertain whether the findings of the agency are supported by substantial evidence in the record and not contrary to the manifest weight of the

evidence. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) Findings of fact by an administrative agency are *prima facie* true and correct. (Ill. Rev. Stat. 1981, ch. 110, par. 3—110.) "In order to conclude that a particular finding is against the manifest weight of the evidence, the reviewing court must be satisfied that an opposite conclusion is clearly evident." *Robinson v. Cook County Police & Corrections Merit Board* (1982), 107 Ill. App. 3d 978, 983, 436 N.E.2d 617, 621.

In this case, the evidence clearly establishes that plaintiff testified falsely before the Federal grand jury. The May 26, 1981, letter from the United States Attorney's office stated that plaintiff had lied while testifying under oath. The October 9, 1980, immunity agreement, which was signed by plaintiff, stated that plaintiff had lied. In fact, plaintiff admitted at the criminal trial that he had lied before the grand jury. Therefore, the Commission's finding that plaintiff lied before the grand jury is supported by the record and not contrary to the manifest weight of the evidence.

The reviewing court must also determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause existed for discharging plaintiff. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885.) Section 11 of the Personnel Code prohibits discharge of employees except "for cause." (Ill. Rev. Stat. 1981, ch. 127, par. 63b111.) The Illinois Supreme Court has defined "cause" as:

> " '*** some substantial shortcoming which renders [the employee's] continuance in his office or employment in some way detrimental to the discipline and efficiency of the service and something which the law and a sound public opinion recognize as a good cause for his not longer occupying the place.' " (*Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 410, 438 N.E.2d 147, 150.)

The agency's decision as to whether cause for discharge exists "will not be reversed unless it is arbitrary, unreasonable, or unrelated to the requirements of service." *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 552, 426 N.E.2d 885, 887; see also *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, 438 N.E.2d 147.

■ The Commission, upon a full review of the discharge hearing, found that as a captain, plaintiff was "expected to provide an example to everyone at the facility *** [and] [t]he fact that misrepresentation occurred *** could raise a credibility issue ***." The Commission further found that "[i]t was extremely significant and eventually det-

rimental to the Department" that plaintiff failed to disclose the shower room incident since the Department was unaware of the incident until plaintiff's testimony in the criminal trial. The Commission's findings also state, "[plaintiff] showed that he cannot be relied on to report incidents as required by his job duties." The Commission finally found that plaintiff's position as correctional captain was "highly sensitive" and required that plaintiff be "above reproach in being an example." In light of all the surrounding circumstances, and the fact that plaintiff's conduct was common knowledge at the Department, the Commission concluded that plaintiff's "behavior constituted unsuitability for [plaintiff's] position within the [Department]." From our review of the record, we cannot say that the Commission's decision to discharge plaintiff was arbitrary, unreasonable, or unrelated to the requirements of service. Accordingly, we affirm the order of the circuit court which upheld that Commission's order of discharge.

Judgment affirmed.

BUCKLEY, P.J., and GOLDBERG, J., concur.