GERARD KLOSS, Plaintiff-Appellee, *v.* THE BOARD OF FIRE AND POLICE COMMISSIONERS OF THE VILLAGE OF MUNDELEIN *et al.*, Defendants-Appellants.

Second District   No. 81—827

Opinion filed July 21, 1982.

REINHARD, J., concurring in part and dissenting in part.

Charles F. Marino, of Chicago, and Rosing, Carlson and Magee, Ltd., of Waukegan, for appellants.

Robert W. Brown, Jr., of Dunlap and Boyd, Ltd., of Libertyville, for appellee.

JUSTICE HOPF delivered the opinion of the court:

The Mundelein Board of Fire and Police Commissioners, as well as the village of Mundelein and its chief of police, appeal from the Lake County circuit court's reversal of the Board's decision to discharge Gerard Kloss from the Mundelein Police Department. After a hearing, the commissioners of the Board found that Kloss should be

discharged because he had violated certain provisions of the Board of Fire and Police Commissioners' rules. Kloss appealed to the circuit court contending that the Board's decision was against the manifest weight of the evidence. After reviewing the record and findings of the Board the circuit court reversed the Board's decision, ordered Kloss reinstated, and awarded him back pay for the time he was off. The Board, the chief of police and the village of Mundelein appeal.

Kloss was charged with violating the Board's rules. The substance of those charges was that on October 9, 1978, Kloss, while off duty, and in his apartment, yelled, kicked, screamed profanities and, most importantly, threatened to kill a police officer while aiming a gun at him.

The record reveals very little conflicting evidence about Kloss' conduct. Kloss had been on the force since 1969, except for a period of time he was on disability for an on-the-job injury.

On the evening of the incident Kloss was at home in his apartment. His next door neighbor, Raymond Newman, was also a Mundelein police officer and was also at home. When he heard a noise in the hallway Newman opened the door and recognized Kloss' fiancee standing in the doorway. She was quite distraught and upset. After she calmed down she told Newman that Kloss might shoot himself. They returned to Kloss' apartment but were unable to get in the door because Kloss shut the door on them. Kloss repeatedly asked to be left alone. During the times when the door was open Kloss appeared to Newman to be rational one moment and the next moment he would be screaming and swearing.

The police were called, and several police officers and paramedics quickly arrived on the scene. Sergeant Sindles testified that he attempted to open the door to the apartment but Kloss shut the door on him. Nonetheless the sergeant pushed the door open again and said he wanted to talk to Kloss. He saw Kloss holding one of his daughters in his left arm, wearing a bathrobe. Kloss repeatedly screamed at the sergeant, saying he should get out of his house or he would kill him. The sergeant kept approaching him. Kloss pulled a gun from the right hand pocket of his bathrobe and pointed it at the sergeant and again told him to get out of his apartment or he would kill him. The sergeant told Kloss he was going to talk to him and kept walking towards him when Kloss' other daughter came running towards Kloss. Kloss put the gun back in his right hand pocket, picked up his daughter and, while holding both girls in his arms, turned his right side to the sergeant and told him to take the gun. The sergeant took the gun and handed it to someone behind him.

After this incident Kloss' moods continued to alternate between rational and violent. Ultimately he agreed to be taken to the hospital.

A number of other officers and paramedics who had been on the scene testified at trial. Of these, only the sergeant recalled Kloss' threats to the sergeant, although other parts of that conversation were overheard.

Gerard Kloss testified that on the day of the incident he had been visited by his ex-wife in the early afternoon and had an argument with her about visitation and child custody. After she left, he and his fiancee obtained a baby sitter for the children and went out to price liquor for their upcoming wedding. They stopped at a number of taverns and Kloss remembered drinking about five beers.

It was the first time in two years that he had anything of an alcoholic nature to drink. His doctor had prescribed medication for his bleeding ulcers, and he testified he had taken that medication earlier in the day, prior to drinking. Kloss remembered very little of the evening in question but could remember waking up in the hospital. He indicated the combination of the prescription drugs and the beer made him ill.

As indicated, the Board found cause to discharge, but the circuit court reversed the Board's decision and ordered Kloss reinstated with back pay and other benefits.

On appeal the Board of Fire and Police Commissioners and the other appellants contend that the trial court did not have jurisdiction to reverse the findings of the Board. The Board contends that the trial court did not have jurisdiction because the complaint and summons, as it was originally issued, was a *mandamus* action and the actual administrative review, summons and amended complaint for administrative review were not filed until long after 35 days from the date that the decision was served on Kloss.

The Administrative Review Act (hereinafter the Act) (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*) applies to actions for judicial review of agency decisions and provides that judicial review must be sought within 35 days from the date that a copy of the decision is served on the party affected by the decision. Ill. Rev. Stat. 1977, ch. 110, par. 267.

In the case at bar, the decision of the Board was presented to Kloss on December 11, 1978. Kloss then filed his first complaint, 28 days later, on January 8, 1979. Personal service, rather than by registered mail, was made by the sheriff on both the police chief and the village clerk. The police chief was served on January 10 and the clerk served on January 19. Subsequently Kloss had the proper administrative review summons issued by the clerk. Contrary to the Board's contention, we believe Kloss did exercise reasonable diligence to obtain service as required by Supreme Court Rule 103(b) (73 Ill. 2d R. 103(b)).

The Board contends that because the Kloss complaint did not specifically request judicial review of the Board's decision and instead requested that Kloss be reinstated, it was, in effect, a writ of *mandamus*. This contention was also in the Board's motion to dismiss the complaint. Having characterized the complaint as a writ of *mandamus*, the Board contends that no complaint for administrative review was filed within the 35-day period. An amended complaint for administrative review was filed by a new attorney on October 14, 1980.

While the Act does set forth certain requirements for a complaint (Ill. Rev. Stat. 1977, ch. 110, par. 272(a)), there is no specific request for relief that must be made. The Act does not require that the specific words "administrative review" be included.

The Kloss complaint alleged that the Board's decision was against the manifest weight of the evidence, was arbitrary and capricious and was without finding in fact or in law. It further requested that the court cause Kloss to be reinstated as patrolman. The complaint, however, makes no specific request for a *mandamus*.

The Board contends that the case of *Klaren v. Board of Fire & Police Commissioners* (1968), 99 Ill. App. 2d 356, 240 N.E.2d 535, is controlling and requires that this cause be dismissed for want of jurisdiction. *Klaren*, however, differs from the situation here. In *Klaren*, the Board entered a reviewable order and the affected party requested a second hearing from the Board. Only after the second hearing, and more than 35 days after entry of the first order, did the affected party petition for administrative review. Similarly, the case at bar is unlike *Norris v. City of Aurora* (1978), 64 Ill. App. 3d 748, 381 N.E.2d 996, where the 35-day requirement was held to be no bar to the addition of parties by an amended complaint.

■■ The Administrative Review Act requires that the Civil Practice Act (Ill. Rev. Stat. 1977, ch. 110, par. 264 *et seq.*), including its provisions for appeal, be made applicable to proceedings under the Administrative Review Act. The Civil Practice Act allows a pleading to be changed at any time before a final judgment in order to enable the plaintiff to sustain the claim it intended to bring. (Ill. Rev. Stat. 1977, ch. 110, par. 33.) In sum, we believe that the pleadings were sufficient to preserve the question for review and that the trial court did have jurisdiction.

Having established that the trial court had jurisdiction, we address the Board's contention that the trial court erred in finding that their decision was against the manifest weight of the evidence.

■■ In *Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 426 N.E.2d 885, a two-step procedure for review of an administrative agency's decision was set forth. First it must be determined if the agency's decision was

contrary to the manifest weight of the evidence. In this regard it should be kept in mind that the findings and conclusions of the Board on questions of fact must be considered *prima facie*, true and correct. (Ill. Rev. Stat. 1977, ch. 110, par. 274.) On the other hand, if the record does not disclose evidence supporting the Board's determination, a reviewing court must not hesitate to grant relief. (*Basketfield v. Police Board* (1974), 56 Ill. 2d 351, 359, 307 N.E.2d 371, 375.) In the case before us the testimony of Sergeant Sindles was sufficient evidence to sustain a finding that Kloss had threatened him with his weapon. Therefore, the Board's findings of fact were not against the manifest weight of the evidence. Contrary to the trial court's findings, we do not think there was conflicting evidence as to whether the sergeant was threatened with a weapon.

The second step in this analysis requires that the court determine if the findings of fact provide a sufficient basis for the agency's conclusion that cause for discharge does or does not exist. (Ill. Rev. Stat. 1977, ch. 24, par. 10—2.1—17.) "Cause" has been defined as a

" 'substantial shortcoming which renders the employee's continuance in office in some way detrimental to the discipline and efficiency of the service and which the law and sound public opinion recognize as good cause for his no longer holding the position.' " *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 30, 370 N.E.2d 511, 513.

The determination of whether or not "cause" for discharge was present is generally for the agency to determine. However, the agency's determination may be overturned if the decision was unrelated to the requirements of service. (*Department of Mental Health & Developmental Disabilities v. Civil Service Com.* (1981), 85 Ill. 2d 547, 552, 426 N.E.2d 885.) We are of the opinion that Officer Kloss' misconduct was unrelated to the requirements of service. Therefore, it did not constitute cause for discharge. We reach this conclusion after careful review of the circumstances of this case and the case law that discusses cause for discharge.

The cases which discuss police misconduct virtually all involve a public display of force. For example, in *Flynn v. Board of Fire & Police Commissioners* (1975), 33 Ill. App. 3d 394, 342 N.E.2d 298, an officer on a public street broke a car window of his ex-girlfriend while off duty and threatened her life. Similarly, in *Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 278 N.E.2d 212, an off-duty patrolman knocked a man down outside of a tavern. Although it has been held that there is little distinction between an off-duty and an on-duty misconduct by a police officer (Davenport), the fact that an officer was off duty at the time of an infraction can be a factor in determining whether or not the conduct was related to

the requirements of the service so that it constitutes statutory cause for dismissal. *Tinner v. Police Board* (1978), 62 Ill. App. 3d 204, 209, 378 N.E.2d 1166.

A recent First District case, *Walsh v. Board of Fire & Police Commissioners* (1981), 103 Ill. App. 3d 635, 431 N.E.2d 1099, involved an off-duty sergeant who was discharged from the force under circumstances similar to those in the case at bar. Walsh, while on a medical disability and under psychiatric care, called a friend and coworker, Sergeant Smith, and told him he was going to do himself in. Smith went to Walsh's home and talked with him and Walsh's wife. Ultimately, Walsh shot him in the face. After hearings Walsh was discharged from the force.

On appeal, the First District held that the maximum sanction of discharge was unwarranted. They found that Walsh's conduct was a manifestation of the psychological problems for which he was on disability supervision. (*Walsh v. Board of Fire & Police Commissioners* (1981), 103 Ill. App. 3d 635, 639, 431 N.E.2d 1099.) Walsh's case was remanded to the Commission for consideration of an alternative sanction to discharge. Although Kloss, in the case before us, was not on a disability pension at the time of his misconduct, *Walsh* is analogous to the situation before us.

■ The final contention posed is that the trial court erred in ordering Kloss reinstated and awarding him back pay subject to any just set-offs. All parties are in agreement that the trial court lacked the authority to order Kloss reinstated and award him back pay. The Administrative Review Act (Ill. Rev. Stat. 1979, ch. 110, par. 274) sets forth the powers of the trial court. While the court can affirm or reverse a Board decision, we can find no authority for the trial court to order reinstatement without a Board hearing. Further, because the record contains no evidence regarding salary, back pay, benefits or set-offs, the court was without authority to enter an order in that regard. (*Sola v. Clifford* (1975), 29 Ill. App. 3d 233, 329 N.E.2d 869; *Dorner v. Illinois Civil Service Com.* (1980), 85 Ill. App. 3d 957, 407 N.E.2d 750.) The trial court lacked jurisdiction to order Kloss reinstated or to award him back wages.

As stated earlier, our review of the record indicates that Kloss' misconduct was unrelated to the requirements of service and therefore did not constitute sufficient cause for discharge. It should be noted that this incident mars an otherwise unblemished career, and occurred while Kloss was off duty in his home reacting to family problems. Further, it is likely he was suffering the effects of a combination of alcohol and prescription drugs.

This matter is remanded with direction that the trial court remand the case to the Board for appropriate disciplinary action short

of discharge.

Reversed and remanded, with instructions.

NASH, J., concurs.

JUSTICE REINHARD, concurring in part and dissenting in part:
While I agree with the majority that the jurisdictional issues raised are without merit and that the decision of the Board of Fire and Police Commissioners of the village of Mundelein that plaintiff, Gerard Kloss, violated certain provisions of the Board's rules was not against the manifest weight of the evidence, I dissent from that portion of the opinion which holds that Kloss' misconduct did not constitute sufficient cause for discharge. Recently, our supreme court in *Sutton v. Civil Service Com.* (1982), 91 Ill. 2d 404, considered the role of the court when reviewing a decision of an administrative agency which found cause for discharge. In *Sutton,* the court stated:

"The question, though, is not whether this court would decide upon a more lenient sanction than discharge were it to determine initially what discipline would be appropriate. Nor is it whether this court would conclude in view of the mitigating circumstances suggested by Sutton that a different penalty would be more appropriate. The question is whether, in view of the circumstances presented, this court can say that the Civil Service Commission, in opting for discharge, acted unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service." (91 Ill. 2d 404, 411.)

From my review of the record, I am unable to conclude that the Board in discharging Kloss acted "unreasonably or arbitrarily or selected a type of discipline unrelated to the needs of the service."

The Board found Kloss guilty of pointing a gun at Sergeant Sindles and threatening to kill him, and found him guilty of other serious misconduct, including kicking doors, fighting with police officers, and yelling and screaming profanities at police officers and others. Although Kloss was off-duty at the time of this incident, a police officer must exercise sound judgment and realize his responsibility to the department and the public at all times. (*Davenport v. Board of Fire & Police Commissioners* (1972), 2 Ill. App. 3d 864, 278 N.E.2d 212.) I consider Kloss' display of a gun toward a superior officer and his fighting and resisting other officers under the circumstances a substantial shortcoming which constitutes sufficient cause for discharge. The majority finds *Walsh v. Board of Fire & Police Commissioners* (1981), 103 Ill. App. 3d 635, 431 N.E.2d 1099, *appeal allowed* (Docket No. 56217, May 28, 1982), 91 Ill. 2d 566, analogous. With all due

respect, I find *Walsh,* which involved an officer who was on medical disability suspension at the time of the incident at issue, distinguishable factually and unpersuasive legally. In that case Walsh's conduct was found by the appellate court to be a manifestation of the very psychological problems for which he was on disability suspension. Here Kloss was not on suspension, but merely off-duty. Moreover, the court in *Walsh* was without the benefit of our supreme court's recent decision in *Sutton v. Civil Service Com.,* which requires that substantial deference be given to the administrative agency's decision to discharge. Kloss' conduct was not an insubstantial instance of misconduct which has been held not to warrant discharge (see *Kreiser v. Police Board* (1977), 69 Ill. 2d 27, 370 N.E.2d 511; *Fantozzi v. Board of Fire & Police Commissioners* (1963), 27 Ill. 2d 357, 189 N.E.2d 275; *Humbles v. Board of Fire & Police Commissioners* (1977), 53 Ill. App. 3d 731, 368 N.E.2d 1049), but constituted a serious incident involving physical and abusive conduct toward his fellow officers, a superior officer, and use of a weapon which all relate to his proper performance as a police officer. (See *Jenkins v. University Civil Service Merit Board* (1982), 106 Ill. App. 3d 215, 435 N.E.2d 804.) I would affirm the entire decision of the Board.